18215

Clarence E. TILLMAN, Appellant, v. The STATE of South Carolina, Ellis C. MacDougall, Director, Board of Corrections, State of South Carolina, and R. F. Goodman, Warden, South Carolina State Penitentiary, Respondents.

(136 S. E. (2d) 300)

*Mrs. Betty McBride Sloan,* of Columbia, *for Appellant,*

*Messrs. Daniel R. McLeod, Attorney General,* and *Edward B. Latimer, Assistant Attorney General,* of Columbia, *for Respondents,*

May 14, 1964.

BUSSEY, Justice.

Appellant is an inmate of the South Carolina Penitentiary serving a life sentence imposed upon him by the Honorable T. B. Greneker, Resident Judge, during the May, 1960, term of the Court of General Sessions for Lexington County, after appellant plead guilty, with the consent of the State, to an indictment that charged him with murder. A jury was impaneled for the purpose of returning a verdict of guilty with a recommendation to the mercy of the court. Appellant was represented by retained counsel at the time of and in connection with his guilty plea.

Pursuant to the decision of this court in *Tillman v. Manning,* 241 S. C. 221, 127 S. E. (2d) 721, the Honorable John Grimball, Resident Judge of the Fifth Judicial Circuit, issued a writ of *habeas corpus* on the petition of the appellant. A very full hearing was held on Saturday, November 17, 1962, at which time appellant was given all possible assistance and cooperation by the court in presenting his case, and he was also allowed to make a motion

for a new trial. Thereafter, by order of November 23, 1962, Judge Grimball dismissed the writ of *habeas corpus,* denied the relief sought by the appellant, and remanded him to the custody of the penitentiary for the completion of the sentence imposed. This is an appeal, in *forma pauperis,* from that order, in which appeal the appellant is represented by able counsel, other than counsel who represented him when he plead guilty and was sentenced.

Although numerous contentions were made by the petition for a writ of *habeas corpus,* and on the hearing below, the only questions on appeal are stated by appellant's counsel as follows:

"1. Did the conditional provision of appellant's representation constitute a violation of due process of law?

"2. Did the conditional representation as a matter of law destroy the voluntary nature of appellant's guilty plea?"

It is conceded by counsel on appeal that these questions do not involve the competency of defendant's former counsel, who admittedly is one of the most able members of the South Carolina Bar. The adequacy of his representation, however, is challenged "within the technical meaning" of Article I, Section 18, of the South Carolina Constitution, and the Sixth and Fourteenth Amendments of the United States Constitution. The argued inadequacy is based upon the alleged "conditional" representation by counsel, it being contended that conditional representation amounts to no representation at all.

The alleged "conditional" representation is based upon the fact that counsel below was unwilling to represent appellant for the purpose of defending him upon a trial before a jury, but was willing to represent appellant only if appellant decided of his own free will to plead guilty. The evidence clearly reflects that counsel was sought out by appellant's wife and went to the jail after being called there by appellant. Counsel went very fully into the case with ap-

pellant on more than one occasion, and had numerous conferences with the solicitor and the law enforcement officers who investigated the case, all of whom made their entire files and all of the State's evidence available to counsel.

The record is quite clear that counsel was unwilling to defend the appellant in a trial before a jury, but the record is equally clear that counsel did nothing to coerce the appellant into pleading guilty. Counsel told appellant that whether or not he plead guilty was strictly up to the appellant who knew just what he had or had not done, and that if appellant did not wish to plead guilty, he could either retain other counsel, or else wait and the court would appoint counsel for him. It was only after counsel and appellant had gone fully into the case and appellant of his own violation decided that his best course was to plead guilty that counsel agreed to represent him solely for the purpose of trying to arrange a plea which would avoid a possible death sentence. A nominal retainer was agreed upon and a portion thereof was paid.

Thereafter, counsel endeavored to procure from the State an agreement to accept a plea of guilty to a charge of manslaughter, rather than murder, in which effort counsel was unsuccessful. He was, however, successful in getting the State to agree to a guilty plea to murder, with a recommendation to the mercy of the court.

When appellant appeared in the court the trial judge, in his usual, well known, efficient, courteous and thorough manner, made every reasonable effort to see that appellant fully understood the consequence of his plea. The transcript of what occurred then clearly shows that appellant fully understood and that, while given every opportunity to speak, he made no contention or even suggestion to the court that he was not completely satisfied with the efforts of his retained counsel. While the guilt or innocence of the appellant is not an issue in a *habeas corpus* proceeding, it is worthy of note that the trial judge asked appellant why he had decided to confess to a crime that had remained un-

solved for some six years, to which appellant responded, "Well, I'll give you an answer your Honor, I felt—well— my conscience kept bearing on me through the years and I couldn't no longer take it."

Appellant now argues that the unwillingness of his eventually retained counsel to represent him in an endeavor to acquit him in a trial before a jury coupled with the threat of the electric chair, coerced him into pleading guilty, rendering his plea involuntary.

We think that the contentions of the appellant are totally without merit. With respect to the threat of the electric chair, it is not only the right but the duty of an attorney, whether retained or appointed in a capital case to discuss and consider with the defendant the possibility of a death sentence following a trial before a jury. While not strictly embraced within the questions stated on appeal, appellant contended below that he was unduly threatened with the electric chair in that both the solicitor and his counsel made positive statements that he would go to the electric chair if he plead not guilty and was tried by a jury. It was found by the lower court in this proceeding that such contention was unsupported by the evidence and in this finding of fact we concur.

With respect to the contention that he was denied due process of law in that his representation by counsel was inadequate, on the ground that such was "conditional," we think there was no condition here imposed which either deprived him of adequate representation or in any way coerced him into pleading guilty.

It is well settled that the quality of the service rendered by counsel meets all requirements of due process when counsel is a member in good standing of the Bar, gives his client his complete loyalty, serves him in good faith to the best of his ability, and, his service is of such character as to preserve the essential integrity of the proceedings as a trial in a court of justice. He is not required

to be infallible, nor to do the impossible, since the defendant is entitled to a fair trial and not a perfect one or a perfect result.

If appellant did not wish to retain counsel for the limited purpose for which counsel was retained, nothing compelled him to do so, as he was clearly given full opportunity to select other counsel or have counsel appointed for him by the court, plead not guilty and take his chances on a jury trial if so minded. Appellant's voluntary decision to employ counsel for the limited purpose for which counsel was, in fact, retained did not have the effect of depriving appellant of due process of law. That counsel most adequately and effectively represented appellant in the accomplishment of the purpose for which he was retained is attested by the result.

No case directly in point on the facts has been called to or come to our attention. We think, however, that the principles set forth in the fairly recent case of *Crosby v. State*, 241 S. C. 40, 126 S. E. (2d) 843, and the authorities cited therein, are applicable and point to the proper disposition of the questions raised on appeal.

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.