Robert J. SHUMAN, Appellant,

v.

C. C. PEYTON, Superintendent of the Virginia State Penitentiary, Appellee.

No. 10152.

United States Court of Appeals Fourth Circuit.

Argued Nov. 1, 1965.

Decided May 30, 1966.

Samuel B. Witt, III, Richmond, Va. (court-assigned counsel), for appellant.

Reno S. Harp, III, Asst. Atty. Gen., of Virginia (Robert Y. Button, Atty. Gen., of Virginia, on brief), for appellee.

Before BOREMAN and BELL, Circuit Judges, and MICHIE, District Judge.

MICHIE, District Judge:

This cause arises on an appeal from denial of a writ of habeas corpus. The petitioner, Shuman, on January 23, 1958 plead guilty to a second degree murder charge and was sentenced by the Circuit Court of Westmoreland County to ten years in the Virginia State Penitentiary. He filed a petition for writ of habeas corpus with the Supreme Court of Appeals of Virginia which was denied on January 22, 1964. On July 10, 1964 Shuman petitioned the United States District Court for a writ of habeas corpus. The Court granted leave to proceed in forma pauperis and an answer was filed by the respondent. On September 18, 1964 the Court entered its memorandum holding that Shuman's petition was without merit. On the same date the petitioner filed an amended complaint and was subsequently granted a hearing on the issues raised therein. The gravamen of this amended complaint is that he was denied the right to trial by jury and also the effective representation of counsel. Shuman contends that his three court-appointed attorneys did not make adequate preparation for his trial and, as a result, they advised him to plead guilty. Had they adequately investigated the matter, he contends, they would have discovered that he had a possible plea of self-defense which should have gone before a jury. Further, he contends that the prosecution's chief witness, one Lena Geraldine Rollins, was not present at the scene of the shooting and therefore lied when she testified that she was an eye-witness. He claims to have communicated this fact to his attorneys but they did not cross-examine her at the trial.

Prior to the trial before the Circuit Court of Westmoreland County, that court appointed Messrs. Charles E. Stuart, Jr., James T. Robertson and J. Clifford Hutt to represent Shuman. At his trial the petitioner plead guilty and the court, after hearing the evidence of Mrs. Rollins and the sheriff, Mr. Skinner, accepted the Commonwealth's recommendation and sentenced the petitioner to ten years in the penitentiary.

At the hearing below petitioner Shuman testified as to his version of the shooting for which he was convicted. He stated that a fight had developed in his house trailer between the victim, Latane Worrell, and himself but that the petitioner's wife managed to separate them, after which she left the trailer and went to the Rollins trailer. After that, the petitioner went outside and overheard Worrell making additional threats. It was at that time that the petitioner got a gun from his car and when he turned around Worrell was coming towards him with a hand behind his back. Petitioner, fearing that Worrell had a knife or something in his hand, then shot and killed Worrell. As for the pre-trial events, the petitioner testified that a couple of weeks before the trial he talked to the lawyer, Charles Stuart, for about five minutes with the thought of possibly retaining him as defense counsel. However, it developed that the petitioner did not have sufficient funds and the conference ceased. Petitioner further testified that, on the afternoon before his trial, the three lawyers appointed by the court came to his cell and talked with him. At this time he claims he told the lawyer who had previously talked to Mrs. Rollins that she was lying and was not present when he shot Worrell. Furthermore, he stated to the lawyers that he did not shoot Worrell as he was leaving the premises. "I said he was not leaving when I shot the man. I said when the man got shot he was coming towards me and had me backed—" He further told the lawyers that his wife knew how the

fight started and that, after having left their trailer, she went to the Rollins trailer and that, according to his wife, Mrs. Rollins did not leave the trailer prior to the shooting. According to the petitioner, no witnesses were called on his behalf though his wife, a Mrs. Nanney Hogge and one Stacey Kay were supposed to have testified for him. Petitioner also testified that the attorneys did not cross-examine Lena Rollins nor the officer who testified for the State and that when he, the petitioner, tried to take the stand the court refused to allow him to do so. Shuman claims that he told his attorneys before trial that he wasn't ready for trial and that during the trial his attorneys did not talk to him nor was he sentenced in open court. According to Shuman, the only people present at the scene of the shooting were the victim and the petitioner.

Mrs. Shuman testified that, after she separated Worrell and the petitioner, she went to Mrs. Rollins' trailer and stayed there until after the shooting and that during that entire time Mrs. Rollins never left the trailer, nor did she, Mrs. Shuman, hear a shot. She further testified that Mrs. Rollins had her three children in the trailer at the time and that she doesn't recall seeing Mrs. Rollins leave the trailer to get any of the children out of the yard before the shooting and that sometime after the shooting both she and Mrs. Rollins left the trailer together and discovered the Worrell boy lying in the yard.

Mrs. Rollins testified that, at the trial, she had stated that she saw the petitioner shoot Worrell and that this climaxed an argument between the two men. According to her, the defendant went and got a gun and shot Worrell. She did not remember if any other persons were present at the time but does recall that Mrs. Shuman was in Mrs. Rollins' trailer.

Mrs. Nanney Hogge testified that she was an eye-witness to the shooting and that the only people present besides herself were Stacey Kay, Worrell and the petitioner.

Kay testified that he witnessed the shooting and the only persons present besides himself were Worrell and the petitioner. He testified positively that Lena Rollins was not outside the trailer when the shooting happened.

This concluded the petitioner's evidence at the hearing.

The respondent called each of the attorneys to the stand to rebut the testimony of the petitioner.

Charles Stuart testified that he was court-appointed and that, prior to the trial, he went to the scene of the crime and feels certain that he interviewed witnesses and talked with the police officers there. He further testified that he thought the attorneys discussed with Shuman what plea he should enter at a conference sometime prior to trial but he couldn't place the date exactly.

Mr. J. Clifford Hutt testified that, while he remembered being appointed to defend Mr. Shuman, he could not recall any of the details. He did testify, however, that it has always been his practice to confer with the defendants before trial and to investigate the cases before trial and that he is positive he discussed the possible pleas with Mr. Shuman. He does recall that Shuman was sentenced in open court and is sure that it was Shuman's decision to plead guilty. One factor which he remembered was that the trial judge took a very dim view of the fact that Shuman had apparently plead guilty upon the promise of the Commonwealth's Attorney to recommend a ten year sentence. He recalls that, after the guilty plea was entered, the Commonwealth's Attorney recommended a ten year sentence but the court asked first to hear evidence before passing judgment. It was then that the court became quite disturbed upon learning the understanding with which the plea was made. At this point Mr. Hutt thought that it would have made a bad situation even worse had defense counsel engaged in cross-examination of the Commonwealth's witnesses.

Mr. J. T. Robertson was called and he testified that he recalled his appointment

and that, while he did not remember many of the details of the case, he has never failed to confer with any person whom he represented and has always made an investigation prior to trial and has discussed pleas with such person. Furthermore, he would never require a defendant to enter a certain plea. He did not recall whether certain witnesses were cross-examined. However, he was certain that, at the time of the trial, he was fully aware of the information concerning the witnesses and the possible conflict in their testimony

After hearing the evidence, the District Court denied the writ. The court found from the evidence that the attorneys had advised the petitioner of his right to plead not guilty and have a jury trial. It further found that, after a conference with the Commonwealth's Attorney, they made a professional judgment that the recommendation of a ten year sentence made by the Commonwealth's Attorney be passed on to Shuman and that it was Shuman himself who made the final decision to enter the plea of guilty. Furthermore, after hearing the witnesses for the petitioner, the court concluded that the evidence adduced therefrom failed to disclose that any of them would have been useful at the petitioner's trial had they testified then. He correctly recognized that over a span of six years witnesses could forget and become confused as to what they actually had seen or heard. In concluding that the petitioner had not been denied any of his constitutional rights, the court found that the lawyers had properly investigated and conducted the case.

Petitioner now contends, first, that the District Court erred in finding as a fact that Shuman was not denied the effective assistance of counsel and that, secondly, even if its findings are not clearly erroneous it incorrectly applied the law to the facts before it.

 Taking up the first contention, we hold that the District Court had before it sufficient facts to find as it did that Shuman was not denied effective assistance of counsel and that its finding was not clearly erroneous. As a result,

this court will not disturb these findings. Root v. Cunningham, 344 F.2d 1 (4th Cir. 1965).

Petitioner's second argument is that the District Court incorrectly applied the law to the facts developed before it. He points to Turner v. State of Maryland, 318 F.2d 852 (4th Cir. 1963), as requiring a shifting of the burden of proof to the respondent once the petitioner has shown prejudice arising from his denial of effective assistance of counsel.

> Normally, in the absence of clear proof that no prejudice resulted, we should be obliged to treat the lawyer's representation as inadequate and the trial as falling short of the standards of due process guaranteed by the Fourteenth Amendment.

*Id.* at 854.

 We cannot agree with this argument. In reading the findings of Judge Butzner in light of the testimony elicited before him, we conclude that he correctly applied the *Turner* principle and that the testimony taken as a whole sufficiently rebuts the petitioner's initial contention of prejudice.

 After the testimony of the petitioner established the possibility of a defense of self-defense as well as the possible bias of the prosecution's chief witness, the Government successfully discharged its burden by the testimony of its witnesses taken in light of the testimony of petitioner and his witnesses. The testimony taken as a whole discloses a controversy as to whether the witness Lena G. Rollins was a witness to the shooting. However, petitioner himself admits that he apprised his attorneys of this fact and the testimony shows that in the final analysis it was the petitioner's decision as to how he would plead and he chose to plead guilty. In light of the testimony adduced as to the events leading up to the decision by petitioner to plead guilty, he is now barred from contending that he was denied a jury trial in violation of his constitutional rights. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Cf. Brookhart v. Janis, 86 S.Ct. 1245, 16 L.Ed.2d 314 (April 18, 1966).

As to the possibility of a defense of self-defense, the evidence supports the District Judge's finding that the attorneys adequately investigated the case and after hearing the petitioner's version apprised him of the consequences of the various pleas.

The failure of counsel to cross-examine the prosecution witness Rollins as to possible bias was adequately explained by attorney Hutt. It was based on the attorney's professional judgment that in the light of the trial judge's irritation at the prosecution's recommendation it would be better not to elicit testimony of a possible detrimental effect to the petitioner.

We hold that the facts developed below warranted the District Court's findings of, (1), adequate representation by counsel and, (2), an intelligent waiver of trial by jury by petitioner's election to plead guilty. The decision below is

Affirmed.